Mr. Charles B. Wood Executive Director Texas Industrial Commission P. O. Box 12728, Capitol Station Austin, Texas 78711
Re: Use of bond proceeds raised under article 5190.6, V.T.C.S., for public display of works of art
Dear Mr. Wood:
You have requested an opinion as to whether a requirement of the city of Austin that the Austin Industrial Development Corporation allocate a predetermined percentage of the bond proceeds of each project financed under its authority to `a public display of works of art' is consistent with the legislative requirement that such bond proceeds be used in promoting and developing industrial and manufacturing enterprises which promote and encourage employment and the public welfare.
The legislation authorizing such financing is the Development Corporation Act of 1979, article 5190.6, V.T.C.S. Section 21 of the act authorizes a municipality to establish an industrial development corporation `to issue bonds . . . to finance the cost of projects to promote and develop industrial and manufacturing enterprises to promote and encourage employment and the public welfare.' Section 2(10) defines `project' as the land, buildings, equipment, facilities and improvements found by the board of directors of the industrial development corporation to be required or suitable for the promotion of manufacturing development and expansion and for industrial development and expansion of certain facilities, as well as facilities related to these manufacturing and industrial facilities, and in furtherance of the public purposes of the act. Section 3 states in part:
It is hereby found, determined, and declared:
 (1) that the present and prospective right to gainful employment and general welfare of the people of this state requires as a public purpose the promotion and development of new and expanded industrial and manufacturing enterprises;
 (2) that the existence, development, and expansion of industry are essential to the economic growth of the state and to the full employment, welfare, and prosperity of its citizens;
 (3) that the means and measures authorized by this Act and the assistance provided in this Act, especially with respect to financing, are in the public interest and serve a public purpose of the state in promoting the welfare of the citizens of the state economically by the securing and retaining of private industrial and manufacturing enterprises and the resulting maintenance of a higher level of employment, economic activity, and stability;
. . . .
 This Act shall be liberally construed in conformity with the intention of the legislature herein expressed. (Emphasis added).
The intention of the legislature is to be found in the language of the statute. Duval Corporation v. Sadler, 407 S.W.2d 493, 497
(Tex. 1966); McGuire v. City of Dallas, 170 S.W.2d 722, 725 (Tex. 1943).
Section 3 of article 5190.6 sets out the legislature's intention in enacting the statute. The fundings and declarations emphasize the need to promote the economic welfare of the general public. The intent which permeates the language of the statute is the promotion of economic, not aesthetic, welfare. Compare Attorney General Opinion M-531 (1969) (appropriation to Fine Arts Commission to educate general public about fine arts). As already noted, the term `project' for example, is defined to include facilities related to specific manufacturing and industrial facilities. Sec. 2(10). Section 21 authorizes the issuance of bonds `to finance the cost of projects to promote and develop industrial and manufacturing enterprises to promote and encourage employment and the public welfare.' Bond proceeds should be spent to further the legislative purpose expressed in article 5190.6, V.T.C.S.
The act describes the results sought as `a higher level of employment, economic activity and stability.' Although the public display of works of art certainly promotes the general public welfare, in the narrow confines of the act before us, the public welfare being served is clearly that of a purely economic nature.
A municipal requirement more appropriate to the purposes of the act would be one dealing with the labor intensive nature of projects funded under the act.
 SUMMARY
A requirement by a municipality permitting creation of an industrial development corporation that a predetermined percentage of bond proceeds of each project be allocated to `a display of works of art' is not consistent with the requirements of the Development Corporation Act of 1979.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Tom Green First Assistant Attorney General
 David R. Richards Executive Assistant Attorney General
 Prepared by Michael Cafaso Assistant Attorney General